United States District Court
Southern District of Texas
**ENTERED**
March 05, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK FAUCETTE, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-942 |
| CHAD WOLF, in his official capacity as Acting Secretary, UNITED STATES DEPARTMENT OF HOMELAND SECURITY ADMINISTRATION, TRANSPORTATION SECURITY ADMINISTRATION. | § § § § § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION**

Mark Faucette worked for the Federal Transportation Security Administration for 15 years until he was fired in 2017. He sues the Acting Secretary of the United States Department of Homeland Security, alleging that TSA discriminated and retaliated against him based on his race, African American, and protected activity.

TSA has moved for summary judgment on both the discrimination and retaliation claims. (Docket Entry No. 23). TSA argues that Faucette was properly terminated based on his disciplinary history and the fact that he had used a falsified resume to gain employment at TSA and to apply for a promotion, in violation of TSA policy. (Docket Entry No. 23 at 17). Faucette responded, and TSA replied. (Docket Entry Nos. 34, 35).

Based on a careful review of the pleadings, the motions, response, reply, the record, and the applicable law, the court grants the defendants' summary judgment motion. The reasons are set out below.

## I. The Summary Judgment Record

The relevant facts and their chronology are largely undisputed. TSA conducts airport security screening and inspections of passengers, baggage, and cargo, including at Hobby Airport in Houston. (Docket Entry No. 23 at 2). Faucette worked for TSA at Hobby Airport for approximately 15 years, until he was fired in 2017. (Docket Entry No. 1 at ¶ 18). Faucette last worked as a Transportation Security Manager, a midlevel management position. (*Id.* at ¶ 18; Docket Entry No. 23 at 2).

TSA's code of conduct, which applies to all employees, sets out the rules for an employee's continued eligibility for required security clearance. (Docket Entry No. 23 at 3; Docket Entry No. 17-2). The code of conduct requires an eligible employee to comply with management directives, meet financial obligations (such as debts), maintain their government credit-card accounts in good standing, and refrain from misusing the cards. (Docket Entry No. 23 at 3, Docket Entry No. 17-2). The code also requires employees to "provid[e] truthful, accurate, and complete information in response to matters of official interest." (Docket Entry No. 17-2 at § F(3)).

TSA also established detailed procedures for the supervisors to follow when investigating violations of the code of conduct and imposing discipline. (Docket Entry No. 16-12). Most disciplinary actions require a two-step notice process. (Docket Entry No. 16-2 at §D). TSA guidelines set out the penalties if violations are found, ranging from letters of reprimand to suspensions to termination. (Docket Entry No. 16-13). Employees may be terminated after a first offense if it is for serious misconduct. (Docket Entry No. 17 ¶ 19, Docket Entry No. 17-3 at 6).

Supervisors may consider an employee's past disciplinary history, the seriousness of the offense, and whether the employee is a supervisor in assessing the appropriate penalty. (Docket Entry No. 16-12 at §G).

### A. Faucette's Disciplinary Record

Faucette was promoted several times during his career at TSA, despite several disciplinary issues. In 2006 and 2007, he was suspended twice for misusing his government credit card and for failing to pay his government credit-card debt. (Docket Entry No. 16-15). In late 2014, Faucette's government credit card, which he was required to have for official travel, was cancelled for nonpayment. (Docket Entry No. 16-18). As a result, Faucette was suspended a third time in early 2015 for failure to timely pay the credit-card debt. (*Id.*).

In early 2016, Faucette received a letter of reprimand for failing to follow a directive to discipline one of his subordinates. (Docket Entry No. 16-20). Around the same time, Faucette's supervisor initiated a financial review of Faucette, a prerequisite to having his government credit card reinstated so that he could resume official travel. (Docket Entry No. 17 ¶ 51). In May 2016, Faucette's security clearance was revoked when he repeatedly failed to provide the information needed for the financial review. (Docket Entry No. 17 ¶ 52; Docket Entry No. 17-14). Because he lost his security clearance, he was suspended indefinitely. (Docket Entry No. 17 ¶ 53; Docket Entry No. 17-15). After an additional review, Faucette's security clearance was reinstated in August 2016, and he resumed his work as a Transportation Security Manager. (Docket Entry No. 17 ¶ 55; Docket Entry Nos. 17-14, 17-15).

Faucette first filed an EEOC complaint in 2016, against Bill Byrne, the Assistant Federal Security Director at Hobby Airport, based in part on the 2015 and 2016 disciplinary actions against

Faucette and on the denial of a November 2015 request for transfer to a different airport. (Docket Entry No. 17-29; Docket Entry No. 17 ¶¶ 76–79).

In early 2017, Faucette was once again disciplined for failing to follow directions from his supervisors. (Docket Entry No. 17 ¶ 58). He initially received a two-day suspension, but it was reduced to a letter of reprimand after he filed a grievance. (Docket Entry No. 17-17).

In June 2017, Faucette applied for a promotion to Lead Transportation Security Manager. (Docket Entry No. 23 at 13; Docket Entry No. 17-19 at 1). The review of his application for the promotion revealed several discrepancies on the resume Faucette attached. (Docket Entry No. 17 ¶ 60; Docket Entry No. 17-19). TSA began an administrative inquiry into the discrepancies. (Docket Entry No. 17-18). The inquiry identified the following problems, among others:

- In his resumes and job or promotion applications provided to TSA, Faucette claimed that he was a former police officer at the University of North Carolina. In fact, Faucette was neither certified, nor had he served as a police officer.

- In the resumes and applications he provided to TSA, Faucette claimed that he received a Technical or Occupational Certificate from Guilford Technical Community College, with a 3.8 grade point average. In fact, Faucette never obtained the certificate and had a grade-point average of 2.581 during the time he was enrolled.

- In biographies provided to TSA, Faucette claimed that he worked as a law-enforcement officer with the Guilford County Sheriff's Department. In fact, he had worked as a detention officer in Guilford County and never held a law-enforcement commission of any kind in North Carolina.

- On July 25, 2002, Faucette submitted a Declaration for Federal Employment with TSA in which he claimed that he had not been fired from any job for any reason within the last five years. In fact, the Guilford County Sheriff's Department had fired Faucette from his position as a detention officer on November 20, 1997, within five years of when he submitted the declaration to TSA.

- In the July 2002 Declaration for Federal Employment, Faucette also claimed he had not quit a job after being told he would be fired, or left any job by mutual agreement because of problems in that job, within the past five years. In fact, in May 2002, Faucette had resigned from his position as a cadet with the University of North Carolina Police Department. The University of North Carolina Police Department had notified Faucette that he was going to be fired because the State of North Carolina had denied his application to obtain a law enforcement commission.

(Docket Entry No. 17 ¶ 61; Docket Entry No. 17-19).

The Declaration for Federal Employment that Faucette submitted in 2002 includes a signed certification stating: "I understand that a false or fraudulent answer to any question or any item on any part of this declaration or its attachments may be grounds for not hiring me, or for firing me after I begin work." (*See* Docket Entry No. 17-23 at 6-7).

As a result of the investigation, Byrne issued Faucette a Notice of Proposed Removal from his employment. (Docket Entry No. 17 ¶ 65; Docket Entry No. 17-23). Under TSA procedures, Faucette had an opportunity to submit a response. (Docket Entry No. 17 ¶ 65). In September 2017, Faucette was placed on administrative leave pending the outcome of the disciplinary process. (Docket Entry No. 17-23 at 8.). TSA granted Faucette's request for a two-week extension to respond and to return to work pending the decision. (Id. ¶ 68). In November 2017, TSA issued

its decision terminating Faucette. (Docket Entry No. 17 ¶ 70; Docket Entry No. 17-24). This lawsuit followed.

In early 2018, Faucette filed another EEOC complaint, titled "Mark Faucette's Formal Complaint of Discrimination," alleging that TSA retaliated against him because of his 2016 complaint against Byrne. (Docket Entry No. 16-5). Faucette claimed that he had complained to a senior supervisor about Byrne's allegedly disparate treatment of African-American employees, that Byrne created a hostile work environment, and that Byrne subjected Faucette to retaliatory discipline, up to and including firing him. (*Id.*).

Faucette disputes some details of the alleged resume misrepresentations, but he does not dispute that he provided false information in the resumes and job applications he submitted to TSA. (Docket Entry No. 19 at 168–69 (Faucette's deposition); Docket Entry No. 17-24 (detailing Faucette's admissions in his response to the Notice of Proposed Removal)). Faucette argues that the events leading up to and including his termination were in retaliation for his 2016 EEOC complaint against Security Director Byrne.

The court considers the motion against the record evidence and the applicable legal standards.

## II.   The Legal Standards

### A.   Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.,* 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 335 (5th Cir. 2017) (per curiam). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp*., 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence*."* *Lamb v. Ashford Place Apartments L.L.C*., 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted).

In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651, (2014) (per curiam)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Title VII

### 1. Discrimination

Under Title VII, a plaintiff may show discrimination in response to a summary judgment motion using either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Direct evidence proves the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010). When, as here, the evidence is circumstantial, the court uses the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). The plaintiff alleging discrimination must make a *prima facie* showing that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) others similarly situated but outside of the protected class experienced more favorable treatment. *Id.*; *see also Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).

The Fifth Circuit has applied the fourth element strictly, so that a plaintiff must show that her employer treated similarly situated employees more favorably in "nearly identical

circumstances." *Reed v. Brady Trucking, Inc.*, No. CV H-18-4437, 2019 WL 1244100, at *11 (S.D. Tex. Mar. 18, 2019) (citation omitted) (emphasis omitted); *see also Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("To establish a claim of disparate treatment, [the plaintiff] must show that [the employer] gave preferential treatment . . . under 'nearly identical' circumstances." (quoting *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir.1990) (per curiam))).

Once the plaintiff has addressed these four elements, the burden shifts to the defendant to explain how the adverse employment action was nondiscriminatory. *McDonnell Douglas*, 411 U.S. at 802. If the defendant proffers a nondiscriminatory basis for the action, then the plaintiff must point to evidence raising a fact dispute as to whether (1) the explanation is a pretext for discrimination or (2) there are mixed motives—the employer's explanation, while true, is only one factor in the decision, and discrimination is another. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation omitted). The plaintiff must show a genuine factual dispute material to deciding whether the defendant discriminated on the basis of the plaintiff's membership in a protected class. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

"[The Fifth Circuit] precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII discrimination claims[.]" *Mitchell v. Snow*, 326 F. App'x. 852, 855 (5th Cir. 2009) (second alteration in original) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007)). "[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* at 854 (quoting *McCoy*, 492 F.3d at 559).

### 2.     Retaliation

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made [] unlawful . . . by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff must point to facts showing that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). The third element, causation, requires the plaintiff to point to evidence showing that the adverse employment action would not have occurred but for the protected conduct. *See Septimus*, 399 F.3d at 608.

Once the plaintiff makes this showing, the defendant has the burden of proffering a legitimate, nonretaliatory explanation for the adverse employment action. *See id.* at 609. If the defendant does so, the burden shifts back to the plaintiff to raise a factual dispute material to whether the articulated reason for the employment action was a pretext for retaliation. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

The Fifth Circuit has not recognized a separate cause of action for a retaliatory hostile-work-environment. *See Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020). But other circuits have recognized the claim, and courts on the Fifth Circuit have assumed that the claim could be cognizable. *See id.*; *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-CV-1034-D, 2017 WL 274133, at *2 (N.D. Tex. Jan. 20, 2017); *see also Boudreau v. Nokia of Am. Corp.*, No. 3:19-CV-01623-E, 2020 WL 7426155, at *6 (N.D. Tex. Dec. 18, 2020) (collecting cases). District courts in this circuit follow a modified approach to addressing

10

retaliatory hostile-work-environment claims, under which "the first element [requires] proof that the plaintiff had engaged in a protected activity, and the third element [requires] demonstration of a causal connection between the harassment and the protected activity." *Zavala*, 2017 WL 274133, at *3.

### III. Analysis

#### A. The Title VII Discrimination Claim

Faucette alleges that TSA discriminated against him and subjected him to adverse treatment and a hostile work environment based on his race, in violation of Title VII. (Docket Entry No. 1 at ¶ 31).

TSA argues that the court may not hear Faucette's discrimination claim because he did not raise it in his EEOC complaint and it did not "fall within the scope" of the EEOC investigation. (Docket Entry No. 23 at 28). Title VII requires claims to be raised with the EEOC before courts can consider them. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

While Faucette's EEOC complaint centers on his retaliation claim, it is framed as a "Formal Complaint of Discrimination." (Docket Entry No. 16-5). The EEOC complaint also raises racially disparate treatment, alleging that Faucette experienced a racially "hostile work environment" and that he had complained to a senior supervisor about Byrne's disparate treatment of African-American employees. (*Id.*). EEOC complaints are construed "liberally." *Chhim*, 836 F.3d at 472. Faucette's discrimination claim "can reasonably be expected to grow out of the charge" that he did raise before the EEOC. *Id.* (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006)). The court therefore considers Faucette's discrimination claim, but finds that it fails as a matter of law.

11

The parties agree that Faucette has established the first and third prongs of the *prima facie* test: he is African American, and he was fired. (Docket Entry No. 23 at 29). Faucette asserts that he was "subjected to verbal misconduct," was "intentionally given a negative evaluation and reprimands," and that he was subjected to an "arbitrary investigation" of his resume, after 15 years of employment with TSA. (Docket Entry No. 1 at ¶¶33, 34). But Faucette has not identified any record evidence of verbal harassment. *See Willis*, 749 F.3d at 317. Nor has Faucette identified record evidence that his disciplinary sanctions were the result of racial harassment rather than of TSA's disciplinary procedures. *See Lamb*, 914 F.3d at 946 ("A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (quotation omitted)).

The voluminous summary judgment record reflects detailed documentation of each disciplinary action taken against Faucette, including the sanctions for delinquent payments on his government credit cards, (Docket Entry Nos. 17-7, 18-3); the reprimand for failing to discipline a subordinate, (Docket Entry No. 16-20); the revocation of Faucette's security clearance and suspension based on his failure to complete the financial review, (Docket Entry No. 17-13); the reprimand for failing to follow directions to complete his supervisory duties, (Docket Entry No. 17-16); and the investigation into his falsified resumes, which culminated in his termination. (Docket Entry No. 17-19).

Faucette has not shown that similarly situated employees outside his protected class received more favorable treatment. *See Reed*, 2019 WL 1244100, at *11 (citing *Okoye v. Univ. of Tex. Hous. Health Sci Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)). Faucette presented no evidence of comparators. (*See* Docket Entry No. 25). In the most similar incident, a Supervisory Security Transportation Officer, a less senior position than Faucette's, received a seven-day suspension for

"lack of candor" on a resume she submitted in applying for a different position. (Docket Entry No. 17 ¶ 96). She is not similarly situated to Faucette. After the employee submitted a grievance, the seven-day suspension was reduced to a letter of counseling. (*Id*.). Her resume stated that she had been an Acting Transportation Security Manager. The inquiry found that, while she did in fact perform the duties of a Transportation Security Manager, she was never officially an Acting Transportation Security Manager. She admitted that she had failed to carefully review the resume for complete accuracy. She accepted responsibility, apologized, and committed to correcting her resume, and she had no prior disciplinary actions. (Docket Entry No. 17 ¶ 95; Docket Entry No. 18 ¶ 63.) She did not lie on her initial application for employment. She had not been fired from a law enforcement agency and did not lie about being a police officer before her employment at TSA.

The record does not support an inference that Faucette was treated less favorably than similarly situated coworkers. Faucette has not raised a factual dispute material to his discrimination claim. Summary judgment is granted as to this claim.

    **B.    The Title VII Retaliation Claim**

Faucette alleges that the defendants retaliated against him after he complained about racial discrimination by initiating reviews and discipline culminating in his firing. To survive summary judgment on this claim, Faucette must point to evidence showing that: (1) he engaged in a protected activity during the relevant time period; (2) he was subjected to an adverse employment action; and (3) there is a causal link "between the protected activity and the adverse employment action." *Davis*, 383 F.3d at 319 (citation omitted).

The parties do not dispute the first two elements. Filing an EEOC charge is a protected activity, and job termination is an adverse employment action. (Docket Entry No. 23 at 31). TSA

13

argues that Faucette has not shown the third element, a causal link between the EEOC charge and the adverse employment action. (*Id*.). "A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him." *Feist v. La, Dep't of Justice, Office of the Att'y. Gen*., 730 F.3d 450, 454 (5th Cir. 2013) (quotation and alteration omitted). The temporal proximity must generally be "very close." *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The more attenuated in time, the more other evidence of discrimination is required to show retaliation. *See id.* at 454–55; *see also Lavergne v. Univ. of Texas Med. Branch*, No. H-19-1992, 2020 WL 5083465, at *7 (S.D. Tex. July 31, 2020) (courts consider "indicia of causation," such as an employee's disciplinary record, the employer's adherence to its own policies and procedures in carrying out the job termination, and the temporal proximity between the protected activity and the adverse employment action.).

The lapse of more than a year between the EEOC complaint Faucette filed in June 2016 and his firing in November 2017 is too attenuated to support an inference of discrimination. In *Myers v. Crestone Intern.*, *L.L.C.*, a three-month period between the plaintiff's protected activity and the alleged retaliatory act was insufficient to demonstrate causation. 121 F. App'x 25, 28 (5th Cir. 2005); *see also Breeden*, 532 U.S. at 273; *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x. 314, 321 (5th Cir. 2014) (over one year between an employee's EEOC charge and job termination could not establish a causal link).

Faucette points to his rejected request to transfer to another airport, which was somewhat closer in time to his June 2016 EEOC complaint. (Docket Entry No. 34 at 16). In March 2017, his application to transfer to Houston's Bush Airport was denied, for the stated reason that the

14

vacancy was no longer available to be filled through TSA's job-swap process.[1] (Docket Entry No. 18-25). In some circumstances, the denial of a transfer may be an adverse employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007). But the denial of the transfer request in this case was more than eight months after Faucette's EEOC complaint, again too attenuated to show causation without other evidence of retaliation. Faucette has not pointed to other evidence.

TSA identifies several events and facts that break any causal chain between the EEOC complaint and the alleged retaliation. They include Faucette's disciplinary history of several past violations and suspensions; the lapse of more than a year between Faucette's EEOC complaint and his termination; and the fact that Faucette applied for a promotion using a falsified resume, which he submitted. (Docket Entry No. 23 at 31–32).

The record supports TSA's compliance with its policies and procedures for investigations and implementing disciplinary steps. (*See* Docket Entry No. 17-19).

TSA's arguments find copious support in the record and are persuasive. Faucette has not pointed to evidence supporting a causal link between his protected activity and the employment challenged actions.[2] Faucette relies on conclusory allegations and statements he made in his own affidavit. The defendants have pointed to numerous documented, legitimate, nondiscriminatory reasons for Faucette's disciplinary sanctions and for his ultimate firing.

---

[1] Faucette refers to a November 2016 job swap request, (Docket Entry No. 34 at 16), but he does not submit support in the form of documents. TSA has submitted records of April 2015, November 2015, and February 2017 job-swap requests. (Docket Entry No. 23 at 18–19; Docket Entry Nos. 18-23, 18-24, 18-25). The discrepancy is irrelevant, because Faucette has not pointed to any record evidence showing a causal link between the denial of any job swap and his EEOC complaint.

[2] Faucette argues that TSA should not have fired him for resume fraud because the statute of limitations for fraud in Texas is four years and he misrepresented employment history from 2002. (Docket Entry No. 34 at 13). The statute of limitations for fraud claims is irrelevant to the issues in this case and does not show that the resume fraud was pretextual. TSA points to evidence that it fired Faucette based on its own policy requiring truthfulness in materials submitted to TSA. Even if the statute of limitation on fraud claims had any relevance to this case, which it does not, Faucette made the misrepresentations on his 2017 application for a promotion. (*See* Docket Entry No. 17-23).

Faucette also makes conclusory allegations that he was subjected to a hostile work environment. He points to no support for his assertions beyond his own affidavit. (Docket Entry No. 34 at 17–18). He argues that he was mistreated during the period when the Notice of Proposed Removal based on his resume fraud was pending. (Docket Entry No. 34 at 18). Faucette asserts that the work environment was hostile because his parking pass was removed and he had to work in a temporary office that was a closet or storage room. (*Id*.). But TSA has pointed to legitimate, nondiscriminatory reasons for each step.

TSA points to evidence showing that, in accordance with TSA policies, Faucette's badge and parking pass were revoked while he was placed on administrative leave during the investigation. (Docket Entry No. 17 ¶ 65). Faucette was allowed to return to work pending the outcome, but he was given administrative, rather than security-screening, duties due to the seriousness of his alleged misconduct. *(Id.* ¶ 68). Because the office to which he was initially assigned was displaced because of flooding due to Hurricane Harvey, Faucette worked with other displaced employees in a supply room on a higher, unflooded floor. (*Id.* ¶ 68). The record supports TSA's contention that Faucette was placed on administrative duty and temporarily displaced to a less-than-ideal office environment for legitimate, nondiscriminatory reasons. Given the evidence, the court is not required to accept Faucette's conclusory statements about harassment at face value. *Scott*, 550 U.S. at 380. The record evidence amply shows that Faucette was fired because of his own misrepresentations on his resume, which were discovered when he applied for a high-level position requiring security clearance. Faucette's misrepresentations about his training credentials, his work as police officer, and his denial that he had previously been fired from a law enforcement agency, among other misrepresentations, were clearly nondiscriminatory reasons for firing him.

Faucette has not shown a factual dispute material to resolving his retaliation claim. Summary judgment is granted on this claim.

## IV. Conclusion

The defendants' motion for summary judgment, (Docket Entry No. 23), is granted. Final judgment is entered by separate order. Each party is to bear its own costs.

SIGNED on March 5, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge